**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

R.G.H.V.,                                              :
                                                       :
     Petitioner,                                  :
                                                       :
v.                                                     :   CASE NO.: 7:26-CV-91 (WLS-CHW)
                                                       :
Warden, IRWIN DETENTION                                :
CENTER, *et al.*,                                      :
                                                       :
     Respondents.                                 :
                                                       :

## ORDER

Before the Court is Petitioner's Emergency Motion to Enforce Judgment ("Motion") (Doc. 5), filed on May 21, 2026. Therein, Petitioner moves the Court to enforce its previous Order (Doc. 3) ("Bond Hearing Order") which granted Petitioner's Habeas Petition (Doc. 1) to the extent the Court ordered Respondents to provide Petitioner with a bond hearing. Petitioner contends that Respondents violated the Court's Order by (1) failing to provide Petitioner with a bond hearing within seven days, and (2) failing to follow the Court's directive that the Department of Homeland Security bear the burden of proving that Petitioner is either a danger or a flight risk. (Doc. 5 at 1). For the reasons discussed below, the Motion is **GRANTED**, in part, and **DENIED**, in part.

### I.   PROCEDURAL BACKGROUND

Petitioner filed a Petition for Writ of Habeas Corpus (Doc. 1) under 28 U.S.C. § 2241 on April 1, 2026, challenging the constitutionality of his detention based on Respondents' failure to provide him with a bond hearing and the opportunity for pre-removal release. On April 6, 2026, the Court entered the Bond Hearing Order granting, in part, Petitioner's Petition, finding that Petitioner was detained under 8 U.S.C. § 1226(a) and therefore not subject to mandatory detention under § 1225. The Court ordered Respondents to provide Petitioner with a bond hearing to determine if he may be released on bond under § 1226(a)(2) and the applicable regulations within seven days of the entry of the Order. The Court further directed that, to comport with the requirements of due process, the Department of Homeland

1

Security (DHS) "shall bear the burden of establishing by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk." (Doc. 3 at 2 (citing *J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1335 (M.D. Ga. 2020))). Petitioner contends that a bond hearing was not held until May 7, 2026, over a month after the Court's April 6, 2026 Order. (Doc. 5 at 1).

On May 21, 2026, Petitioner filed the instant Motion, seeking enforcement of the Bond Hearing Order. Respondents timely filed a Response (Doc. 6) in opposition on June 11, 2026. Petitioner filed his Reply (Doc. 7) on June 12, 2026. Thus, the Motion is fully briefed and ripe for ruling.

## II.   **FACTUAL BACKGROUND**

Petitioner is an asylum-seeker who is a native and citizen of Venezuela. (Doc. 5 at 2). He entered the United States without inspection around five years ago and received Temporary Protected Status (TPS), which allowed him to reside in the United States until the program was discontinued. (*Id.*) Petitioner currently has a pending asylum application. (*Id.*) Prior to his arrest, he resided in North Carolina where he had a fixed address, paid his taxes, and had stable and lawful employment. (*Id.*) Petitioner alleges he has no criminal history, and his grandfather is a U.S. citizen (*Id.*) On March 26, 2026, DHS issued a Form I-862, Notice to Appear ("NTA") charging Petitioner as removable under § 212 (a)(6)(A)(i) of the Immigration and Nationality Act, (INA). (Doc. 6-1 at 3). Petitioner was subsequently detained by Respondents and transferred to the Irwin County Detention Center in Ocilla, Georgia. (*Id.*)

After the Court granted Petitioner's habeas petition, Respondents scheduled a bond hearing for April 10, 2026, before Immigration Judge Pimentel. (Doc. 5-2). However, the hearing did not take place because Respondents transferred Petitioner to another detention facility. (Doc. 5 at 3); (Doc. 5-3). Petitioner eventually received a bond hearing on May 7, 2026, before Immigration Judge Doughty (IJ Doughty). (Doc. 5-4). In advance of the hearing, Petitioner provided 181 pages of evidence, including his pending applications for asylum, letters of support from Petitioner's employer, family, friends, and members of Petitioner's cycling club, tax documents, verification of employment and lack of criminal history, his apartment lease contract, his most recent TPS approval notice, and other relevant documents. (*See generally* Doc. 5-1).

At the May 7, 2026 hearing, the Department of Homeland Security (DHS) did not present any evidence apart from the Bond Hearing Order. (*See* Doc. 5-8). According to Petitioner, DHS made general statements, for example, "relief is speculative," "no community ties," and "short amount of time in the U.S.," to argue against Petitioner receiving a bond. (Doc. 5 at 3). Petitioner also alleges that DHS presented no evidence of any failure on his part to attend court hearings or otherwise comply with immigration officials, or any evidence of alternatives to detention. (*Id.* at 3–4).

In a written order, IJ Doughty set bond in the amount of $60,000, stating that the flight risk Petitioner poses cannot be "mitigated by a bond in any lesser amount." (Doc. 5-9 at 3). Although IJ Doughty acknowledged Petitioner's evidence of his family and community ties, he found those ties to be "brief and shallow" in light of Petitioner's presence in the United States for only five years. (*Id.*) IJ Doughty went on to state that Petitioner had not "demonstrated prima facie eligibility for relief" regarding his application for asylum and withholding of removal. (*Id.*) Significantly, IJ Doughty placed the burden on Petitioner to show that he is not a flight risk.[1]

## III.    PRELIMINARY ISSUES

### A.  Habeas Corpus Legal Standard

"[T]he writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). 28 U.S.C. § 2241 confers upon district courts the power to grant writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." This power extends to challenges brought by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91 (2025).

### B.  Jurisdiction

Respondent argues that 8 U.S.C. § 1226(e) expressly precludes the Court from reviewing IJ Doughty's bond decision. (Doc. 6 at 3). Indeed, "§ 1226(e) precludes an alien

---

[1] Respondents submit a memorandum opinion authorized by IJ Doughty on June 10, 2026, in support of their arguments. (*See* Doc. 6-1). The Court, however, declines to consider the memorandum opinion because it was written over a month after both the bond hearing took place and the original written order was entered, and for a purpose that is not clear to the Court. Respondents provide no basis for why the Court should consider this after-the-fact document over the original, contemporaneous order. Respondents are advised that after-the-fact justifications cannot cure procedural deficiencies at the hearing.

from 'challeng[ing] a "discretionary judgment" by the Attorney General or a "decision" that the Attorney General has made regarding his detention or release.'" *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). However, this express preclusion is cabined in the immediate next sentence in *Jennings*, "§ 1226(e) does not preclude 'challenges [to] the statutory framework that permits [the alien's] detention without bail.'" *Id.* (quoting *Denmore*, 538 U.S. at 517). Indeed, where detainees challenged "the constitutionality of the entire statutory scheme under the Fifth Amendment," § 1226(e) did not preclude their claims. *Id.* Here, Petitioner alleges IJ Doughty violated his due process rights and this Court's Bond Hearing Order by putting the burden of proof on him rather than DHS.

Further, on the jurisdictional issue, "[c]ourts have the inherent power to enforce compliance with their lawful orders[.]" *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991). The Court ordered Respondents to "provide Petitioner with a bond hearing . . . under § 1226(a)(2) and the applicable regulations." (Doc. 3 at 2). In so ordering, the Court expected Respondents would hold a bond hearing that comports with due process, "including the requirement that the Department of Homeland Security shall bear the burden of establishing by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk." (*Id.*) Because Petitioner alleges that Respondents did not, the Court has jurisdiction to review these allegations and enforce its Order as needed.

## IV.    DISCUSSION

Petitioner's Motion raises three issues: (1) the untimeliness of the bond hearing, (2) whether the burden was improperly placed on Petitioner to show that he is not a flight risk, and (3) whether IJ Doughty failed to conduct an individualized assessment, as required by due process, in setting the $60,000 bond.

### A.  Untimeliness

Respondents concede that Petitioner was not provided with a bond hearing within the timeframe set forth in the Bond Hearing Order because he was transferred to another detention facility prior to his first scheduled hearing on April 10, 2026. (Doc. 6 at 1–2). Respondents contend, however, that there is no evidence Petitioner's transfer was connected to his habeas petition or the Bond Hearing Order, or that the failure to provide the hearing in a timely manner was intentional. (*Id.*) Counsel for Respondents explains that upon learning of

4

the transfer and that the hearing had not been held as scheduled, he immediately set out to remedy the situation by notifying DHS that a new hearing should be scheduled as soon as possible. (*Id.* at 2). The hearing was rescheduled for May 7, 2026, and took place that same day. (*See* Docs. 5-4 & 5-9).

The Court finds that Respondents' failure to provide Petitioner with a bond hearing within seven days violated the Bond Hearing Order. The Court, however, declines to grant Petitioner's Motion on the sole basis that the hearing was untimely because Petitioner received a hearing before the filing of the instant Motion.[2]

Further, while the Court acknowledges the discretion afforded to DHS in the housing of detainees in its custody, Respondents are also under an obligation to comply with this Court's orders, including those that require action within a specified time. As such, Respondents shall file a response to the instant Order informing the Court of the cause or reason for the delay in holding Petitioner's bond hearing, notwithstanding his transfer from one facility to another. Such explanation shall be filed on the Record **within seven (7) days** of the entry of this Order.

### B. Burden of Proof

Petitioner contends that Respondents, via IJ Doughty, violated the Bond Hearing Order and due process by placing the burden on him to show that he is not a flight risk. (Doc. 5 at 8). Respondents concede that the burden was improperly allocated but argue that the error was not prejudicial, and Petitioner's Motion should therefore be denied, because IJ Doughty ultimately concluded that Petitioner carried the burden, as evidenced by the grant of bond. (Doc. 6 at 2). The Court disagrees.

In *D.Y.E.H. v. Warden, Irwin Det. Ctr.*, this Court found that due process requires the burden of proof to be placed on the Government to prove by clear and convincing evidence that a petitioner-detainee is a flight risk or danger to the community. No. 7:25-CV-201 (WLS-AGH), 2026 WL 1230386, at *7–10 (M.D. Ga. Apr. 6, 2026). Indeed, the Bond Hearing Order in this case specifically directed that DHS "shall bear the burden of establishing by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk."

---

[2] The Court makes no finding as to the appropriate remedy when the Government fails to hold a bond hearing in violation of an order granting a bond hearing.

(Doc. 3 at 2). A bond hearing that places the burden of proof on the petitioner is a violation of due process, regardless of whether the petitioner received a bond. *See id.* at *11 (finding that bond hearing did not comport with requirements of due process where burden of proof was placed on petitioner, even though petitioner received a bond).

Here, IJ Doughty placed the burden on Petitioner and found that he posed "a significant flight risk[,]" despite the 181 pages of evidence Petitioner submitted to the contrary. (Doc. 5-9 at 3); (*see* Doc. 5-1). Respondents ask the Court to presume that the outcome would have been the same if the burden had been properly allocated. (Doc. 6 at 4 ("Even if the burden had been properly allocated, the IJ would have been required to take the next step and determine the appropriate amount of bond.")). The Court declines to engage in such speculation but notes it is equally plausible that IJ Doughty could have found Petitioner not to be a flight risk at all—and therefore, a lesser bond appropriate—had the burden been properly placed on DHS, which presented no evidence from which flight risk could be found. (*See* Doc. 5-8). In any event, Respondents ask the Court to reweigh the evidence to determine that the result would have been the same, which is precisely the kind of review the Court is expressly prohibited from conducting. *See* 8 U.S.C. § 1226(e). The Court cautions Respondents that they are taking a stance inconsistent with their previous representations regarding the Court's ability to review the merits of an IJ's decision.

Respondents also argue that the improper burden allocation was not prejudicial. (Doc. 6 at 2 ("[T]he fact that the burden was improperly allocated did not ultimately prevent Petitioner from obtaining the bond that he sought.")). As discussed above, however, the Court's review is limited to whether the bond hearing comported with the requirements of due process, not whether a failure to provide due process was harmless. Based on the foregoing, the Court finds that Petitioner's bond hearing before IJ Doughty did not comport with the minimal requirements of due process because the burden of proof was incorrectly placed on Petitioner, in violation of the Bond Hearing Order.[3]

---

[3] Because the Court finds that the bond hearing violated due process based on the improper allocation of the burden of proof, the Court need not address whether the hearing was individualized.

## **CONCLUSION**

In sum, the Court finds that Petitioner's bond hearing before IJ Doughty did not comport with the minimal requirements of due process because the burden of proof was incorrectly placed on Petitioner. Therefore, Petitioner's Motion (Doc. 5) is **GRANTED**, to the extent that Respondents in this action are hereby **ORDERED** to provide Petitioner with a new, individualized bond hearing **within seven (7) days** of the entry of this Order to determine if Petitioner may be released on bond under § 1226(a)(2) and the applicable regulations. In this new hearing, the Department of Homeland Security shall bear the burden of establishing by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk. Any bond decision made must be individualized, meaning after and reflective of the consideration of all evidence provided. Further, the IJ must consider non-bond alternatives to detention or, if setting a bond, Petitioner's financial circumstances and ability to pay. *See D.Y.E.H.*, 2026 WL 1230386, at *11 (finding that due process requires an IJ to consider a non-citizen's financial circumstances and ability to pay once the IJ determines that release on bond is appropriate). If the Government fails to provide Petitioner with such a bond hearing within seven days of the entry of this Order, the Government is **ORDERED** to release Petitioner immediately. Petitioner's Motion is **DENIED**, to the extent he seeks immediate release.

Further, Respondents shall file a response to the instant Order informing the Court of the cause for the delay in holding Petitioner's bond hearing, notwithstanding his transfer from one facility to another, **within seven (7) days** of the entry of this Order.

**SO ORDERED**, this 26th day of June 2026.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

### C. Individualized Assessment

Petitioner further contends that Respondents failed to provide a constitutionally compliant bond hearing because IJ Doughty's decision to set a $60,000 bond was not individualized. (Doc. 5 at 7–8). In response, Respondents point to IJ Doughty's four-page memorandum opinion, which provides a detailed analysis of Petitioner's evidence and circumstances. (*See* Doc. 6 at 2–3); (Doc. 6-1). Petitioner objects to Respondents' reliance on the opinion, which he claims was prepared in advance of his appeal to the Board of Immigration Appeals and as an effort to offer "post hoc rationalizations for [IJ Doughty's] decision . . . in an attempt to circumvent the argument that the bond determination was not individualized[.]" (Doc. 7 at 4).

The Court declines to consider the memorandum opinion because it was written (1) over a month after the bond hearing occurred and the original written order was entered, and (2) for a purpose that is not clear to the Court. Respondents provide no basis for why the Court should consider this after-the-fact document over the original, contemporaneous order.

The final issue the Court must address is whether due process requires that, once release on bond is deemed appropriate, the IJ must consider a petitioner's ability to pay or alternative conditions of release. To answer this question, the Court must conduct another analysis under the *Mathews* test.

As to the first factor, the Court has already concluded that the private interest at issue here, freedom from imprisonment, is fundamental. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'")).

As to the second factor, the risk of erroneous deprivation, "when the [G]overnment determines what bond to set without considering a detainee's financial circumstances, or the availability of alternative conditions of release, there is a significant risk that the individual will be needlessly deprived of the fundamental right to liberty." *Hernandez*, 872 F.3d at 993. Indeed, when an IJ fails to consider these matters and sets a bond amount obviously outside of the

8

non-citizen's financial resources, "such a decision amounts, for all practical purposes, to a denial of bond." *Abdi v. Nielsen*, 287 F. Supp. 3d 327, 338 (W.D.N.Y. 2018). Although consideration of alternatives or ability to pay will not automatically guarantee a bond that a non-citizen is financially able to pay, "IJs and ICE will certainly be less likely to impose an excessive bond if they are mandated to at least *consider* financial circumstances and alternative conditions before setting the amount." *Hernandez*, 872 F.3d at 993–94 (emphasis in original). Thus, mandating a consideration of these matters minimizes the risk of an erroneous deprivation.

As to the third factor, the Government's interest, "the [G]overnment has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Id.* As the Ninth Circuit put it in *Hernandez*,

> A bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests . . . [and] undermines the connection between the bond and the legitimate purpose of ensuring the non-citizen's presence at future hearings.

*Id.* at 991. Respondents make no argument as to any burden that would befall the Government should it be required to consider alternatives to detention and ability to pay. And any administrative cost that might accompany the requirement that IJs at least consider financial circumstances and potential alternative conditions of release is minimal at most and easily outweighed by the risk of erroneous deprivation of liberty.

Thus, the *Mathews* balancing weighs decisively in favor of requiring consideration of a non-citizen's ability to pay and alternative conditions of release once an IJ determines that release of the detainee is appropriate. *See Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 800 (W.D.N.Y. 2019) ("[T]he Court finds that both due process and BIA precedent require the IJ to consider ability to pay and alternative conditions of release in setting bond."); *Hernandez v. Decker*, No. 18-CV-5026, 2018 WL 3579108, at *12 (S.D.N.Y. July 25, 2018) (same); *Alvarez Ortiz*, 808 F. Supp. 3d at 601 (ordering a bond hearing under § 1226(a) where the IJ was required to consider non-bond alternatives to detention or, if setting a bond, the petitioner's ability to pay).

## CONCLUSION

In sum, the Court finds that Petitioner's bond hearing before IJ Doughty did not comport with the minimal requirements of due process because it was not individualized and the burden of proof was incorrectly placed on Petitioner. Therefore, Petitioner's Motion (Doc. 12) is **GRANTED**. Respondents in this action are hereby **ORDERED** to provide Petitioner with a new, individualized bond hearing **within seven (7) days** of the entry of this Order to determine if Petitioner may be released on bond under § 1226(a)(2) and the applicable regulations. In this new hearing, the Department of Homeland Security shall bear the burden of establishing by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk. Any bond decision made must be individualized, meaning after and reflective of the consideration of all evidence provided. Further, the IJ must consider non-bond alternatives to detention or, if setting a bond, Petitioner's financial circumstances and ability to pay. If the Government fails to provide Petitioner with such a bond hearing within seven days of the entry of this Order, the Government is **ORDERED** to release Petitioner immediately.

Finally, for good cause, Petitioner's Motion for Leave to Exceed Page Count (Doc. 15) is **GRANTED**.

**SO ORDERED**, this 6th day of April 2026.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**